(104 So. 632)

No. 26751.

## MARTEL APPARATUS CO. v. LAFAYETTE SUGAR REFINING CO., Limited.

(Feb. 2, 1925. On the Merits, May 25, 1925.)

*(Syllabus by Editorial Staff.)*

**On Motion to Vacate Order of Extension and to Dismiss.**

**1. Appeal and error ⬿624—Ex parte order granting extension cannot be rescinded, where application timely made and truth of causes alleged in support thereof not challenged.**

Where application for extension of time for filing transcript was timely made and the truth of causes alleged for extension were not challenged, and there was no reservation of right to attack order, *held* that, in view of Code Prac. art. 883, and Supreme Court rule 4 (136 La. p. ix), action of court on such application, though ex parte, is final, and order granting extension cannot be rescinded, and appeal thereby defeated.

On the Merits.

**2. Sales ⬿176(5)—Seller held to have broken contract, but buyer to have extended time for performance.**

Where filters installed by seller and tested under its supervision, failed to work, the contract was broken, but, where buyer demanded that they be made to work, offered to help remedy the defects, made changes with seller's consent, and expressed desire to test their effect by actual operation, there was no rescission, for the breach, but an extension of time for performance.

**3. Sales ⬿173—Seller's delay held to defeat its claim that buyer prevented performance.**

Seller's delay in remedying defects in filters, after their failure to work, *held* to bar it from claiming that performance was prevented by buyer, though after second test, made at buyer's suggestion, there was not sufficient time, before end of season, to remedy defects and operate them for 30 days, so as to mature final payment.

**4. Sales ⬿288(2)—Attempts made by defendant's engineer, with consent of plaintiff, to remedy defective filters held not an acceptance of such filters.**

Where filters sold by plaintiff to defendant failed completely to fulfill guaranty, *held,* that attempts by defendant's engineer to remedy defects, which was done with consent of plaintiff, did not constitute an acceptance of such defective filters.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

Action by the Martel Apparatus Company against the Lafayette Sugar Refining Company, Limited, in which defendant set up a claim in reconvention. From a judgment rejecting plaintiff's demand, and allowing defendant's demand in reconvention, plaintiff appeals. Affirmed.

Donelson Caffery, of New Orleans; and J. Sully Martel, of Franklin, for appellant.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellee.

## On Motion to Vacate Order of Extension and to Dismiss.

OVERTON, J. On May 15, 1924, an appeal was granted herein to plaintiff, and the return day was fixed for July 10, 1924. On the return day, on motion of counsel for appellant, supported by an affidavit, an order was granted by this court extending the return day to September 10, 1924. The validity and sufficiency of this order is not questioned. However, appellant did not file the transcript on September 10th, but on that day made application through its counsel, supported by an affidavit made by the deputy clerk of the lower court, for a second extension. The ground for the application is stated in the affidavit made by the deputy clerk, and was that the clerk was unable to complete the transcript, for the reason that certain exhibits, offered in evidence by counsel for appellant, had not been filed. The court granted this application on the same day that it was made, and extended the return day to October 10, 1924. On October 9, 1924, a third application was made for time within which to lodge the record in this court. This application was supported by affidavit, and was based upon the ground that the clerk had not been able to complete the transcript, for the reason that certain documents, introduced in evidence, had been mislaid, and counsel hoped to find them in order to complete the record. The application was granted on the day on which it was made, and appellant was given until November 10, 1924, within which to file the record here. On November the 8th of that year the transcript was filed in this court.

Within three days after the filing of the record here, the appellee filed a motion to vacate the last two orders of extension granted, on the ground that they were entered upon an insufficient showing, and prays that said orders be set aside and that the appeal be dismissed.

Appellee questions the validity of the last two orders of extension, and particularly the first of those two, on the ground that they "were not properly and legally obtained, since the reasons for these extensions, as assigned in the affidavits, do not show that the failure to have the transcript in shape for filing and the failure to file it were due to some cause beyond the control of the appellant." Appellee also contends that, as the orders attacked were granted ex parte at the instance of appellant, they are not conclusive upon it (the appellee).

The first question to be decided is the one as to the right of this court to examine into the validity of an order granting an extension, on the ground that the cause for the extension was insufficient, where, as in the present case, no misrepresentation of fact was made to obtain the order, and the application for it was timely filed.

Article 883 of the Code of Practice provides in substance and effect, in so far as relates to the matter under inquiry, that if from some cause, not under his control, the appellant should be unable to file the transcript in this court on the day appointed by the inferior judge, or within three days thereafter, he may apply, before the expiration of said delay, either in person or by attorney, for additional time within which to bring the record up, and that additional time may be granted, if the event causing the delay be proved to the satisfaction of this court. The proof called for by this article is required to be made by affidavit showing specifically the cause for the delay. Rule 4 of this court (136 La. p. ix).

Appellee, after citing the foregoing article and rule 4, says that the law is clearly to the effect that an ex parte order of extension, granted at the instance of an appellant, is

neither binding nor conclusive; and hence, if it be shown that such order was in fact improperly entered, the showing being insufficient, the authorities are to the effect that it is not only the privilege but the duty of the court, when the situation is called to its attention by an appropriate motion, to set aside the order improperly rendered, and to dismiss the appeal. Appellee cites in support of its position Succession of Kuntz, 33 La. Ann. 30; Chrétien v. Poincy, 33 La. Ann. 131; and Œrtling v. Commonwealth Bonding & Casualty Co., 134 La. 26, 63 So. 611.

In the Succession of Kuntz, a motion was made to rescind an order, granting an extension, and to dismiss the appeal. The motion, however, unlike the present one, challenged the correctness, in a material respect, of the affidavit, showing the cause for the delay. The court found that the order was based on a cause which did not exist, and therefore that the order of extension was wrongfully obtained, and hence rescinded the order and dismissed the appeal. In the Sterling Case inquiry was apparently made into the sufficiency of the cause alleged for the delay; but in that case the right was expressly reserved to the appellees, in the order granting the extension, to move for the dismissal of the appeal, which reservation the court mentioned prominently, and therefore apparently stressed, in its opinion. In the Œrtling Case, while the ruling was to the effect that the order granting the extension would not be considered as binding yet it appears from the opinion that the affidavit showing the cause for the delay in filing the transcript was made in such a manner as to make the affidavit misleading, by failing to show what the court, in passing upon the motion to dismiss, thought was probably the real cause for the delay. Therefore the case in principle is not unlike the Succession of Kuntz, cited supra. In the Poincy Case the court inadvertently granted an order of extension upon an application filed after the expiration of the return day; and therefore properly set aside the order, for, the moment the return day expired, with no application either before the court for the extension of the return day, or with no such application granted, the right of appeal ceased to exist, and the court was powerless to revive it.

[1] The foregoing cases are authority for rescinding an order of extension, where the application for the extension was not timely made, or, if timely made, where the affidavit showing the cause for the delay does not state the true cause, and the court is thereby misled into granting an extension for a cause which did not exist, or where the right to move for the rescission of the order is expressly reserved in the order itself. They should not be extended, however, to include cases where the applications have been timely made, and where the truth of the causes alleged for the extension are not challenged, and there has been no reservation of the right to attack the order. In such cases, in our view, the article of the Code of Practice, cited supra, contemplates that, when the court acts on the application, although it acts ex parte, its action is final, and the order granted cannot be rescinded and the appeal thereby defeated. The finality of such orders the Legislature may properly have had in view, for in granting them the court is merely extending the time within which to file the transcript in order to protect the right of appeal.

It is therefore ordered that the motion to vacate said orders and to dismiss this appeal be overruled.

## On the Merits.

ST. PAUL, J. [2] This case involves only questions of fact. Our study of the transcript satisfies us that the conclusions of the trial judge are correct; and we now adopt his written opinion in full as follows, to wit:

## Reasons for Judgment.

The plaintiff sues for the unpaid balance of the price of five filters furnished to the defend-

MARTEL APPARATUS CO. v. LAFAYETTE SUGAR REFINING CO.

ant under a written contract. The defense is that the filters furnished were defective and failed to fulfill the guaranty contained in the contract; and in reconvention the defendant asks judgment for amounts paid on account of the price of the filters and disbursed by it for the plaintiff in connection with the installation of the machines and the efforts of the defendant to make them work.

The date of the contract is March 31, 1920. It provides for delivery of the machines by July 1, 1920, which would have been in time for the 1920 grinding, and contains the following:

"We [Martel Apparatus Company] guarantee material and workmanship of this installation to be first class in every respect. We also guarantee that these filters will filter the entire mill juices of 200 tons of cane each without lime or sulphur, producing plantation granulated sugar or clarified, using Filter-Cel, subsequent to being heated to 210 deg. F. or more. Also we guarantee the five presses to handle satisfactorily 1,000 tons of cane daily."

The filters in question are a recent invention of Mr. Louis J. Martel, president of the plaintiff company. If efficient and successful, they would greatly simplify and cheapen the process of making sugar and molasses from cane, and the products would be of better quality.

Delivery of the filters was delayed until some time in October, 1920; and there was a further delay of about three weeks while the plaintiff procured galvanized iron filter frames to substitute for the frames of copper with which the filters were first equipped, but which experience elsewhere had proven to be deficient in strength, so that it was only in November that operations could begin.

The filters were worked under the supervision of the plaintiff's representatives. Faults both of design and construction at once developed, and the filters failed completely to fulfill the guaranty. Failure was confessed by the plaintiff's representatives, who advised the defendant's superintendent to return to his old methods and apparatus.

In Levy v. Schwartz, 34 La. Ann. 213, the court said: "We consider that the construction, upon plaintiff's premises and delivery to him of a press constructed unskillfully and not in accordance with the contract was an active violation of the contract, which ipso facto placed defendants in default, without the necessity of any formal putting in mora."

So in this case the situation in the fall of 1920 was that the plaintiff had breached its contract, and the defendant was released. If the defendant is now liable under the contract, it must appear that the plaintiff was allowed further time, and within that time performed its obligations, or that the defendant prevented it from doing so.

There followed a futile correspondence, in which the defendant demanded that the plaintiff do without delay what was necessary to make the machines work; and the plaintiff's representatives, who, as I must believe, were short both of cash and of ideas, played for time. However, during January, 1921, there were two interviews between Mr. Louis J. Martel, the plaintiff's president, and Mr. Guiterrez, the defendant's engineer; in which, on the latter's expressing his hope for the success of the filters and his willingness to help the plaintiff remedy the defects which had manifested themselves, Mr. Martel accepted his offer and told him to go ahead. There is some difference between the testimony of the two, but all the circumstances and probabilities support the version of Mr. Guiterrez, and I must accept it.

While this correspondence was going on (and time for the preparation for the next grinding was passing), Mr. Guiterrez busied himself with the machines and corrected certain faults of construction and workmanship which he had observed; the effect of which was, not to alter the design, but only to make the filters work according to the design.

On August 10, 1921, the plaintiff wrote the defendant that Mr. Houlihan, its engineer, would shortly visit the refinery to adjust and make the filters ready, and the defendant was asked to return for adjustment of the flushing lines; that being the apparatus provided to clean the filter of the mud and débris left in it by the process of filtration. By that time Mr. Guiterrez's work on the apparatus was complete, and it was not returned.

Mr. Houlihan arrived one month later (on September 9). Mr. Guiterrez and Mr. Denbo, the superintendent, then exhibited to him the work they had done on the filters; and, learning from him that the plaintiff purposed adding a tank for "percolating," they showed Mr. Houlihan how it might be placed, and offered him a small engine which they had on hand to drive the agitator which was to be used in the tank. But they said they would like to try the effect of their work on the filters by actual operation; if the result was unsatisfactory, the plaintiff might try its newly designed flushing line, of which he had told them. Mr. Houlihan promised to report this suggestion to the plaintiff's officers, and he left for New Orleans the same day. He arrived in New Orleans on September 10 and made his report; the plaintiff waited until the 15th, when it wrote the defendant equivocally, but

without repeating its request for the return of the flushing lines, and it made no effort to get the percolating tank ready.

On October 15, Mr. Denbo wrote the plaintiff that he would make an effort to work the filters on the 26th of that month, and he invited the plaintiff to send a representative. In its reply, dated October 17, the plaintiff attacked the defendant by charging that when, during the previous month, it had sent Mr. Houlihan to put the filters in readiness to operate, the defendant's representatives had refused to permit him to enter the factory, and told him they purposed to make such changes in the filters as they thought necessary and to operate them without the plaintiff's assistance; so that the plaintiff considered that the defendant had taken the matter into its own hands, and it refused to send a representative to be a spectator of the test.

The test was made, and again the filters failed. On October 31, 1921, the defendant's attorneys wrote the plaintiff, informing it of the fact, and they renewed the defendant's demand that plaintiff's guaranty be fulfilled, or that the filters be removed and the moneys paid the plaintiff refunded, to which the plaintiff replied, repeating the statements that its engineer had been refused admission to the refinery; that the defendant had irrevocably taken the operation into its own hands; that the matter was ended so far as the plaintiff was concerned; and that it expected payment of the remainder of the price.

This suit was then filed.

It results from the conduct and letters of the defendant that it did not declare the rescission of the contract on the plaintiff's default, but allowed further time for its performance. But the fact is, as I must find it, that, so far from doing the work they were guaranteed to do, that is, to filter satisfactorily the juice from 1,000 tons of cane daily for 30 days, the filters never operated satisfactorily for so much as one day, or at all; and the plaintiff's obligations under the contract have never been performed.

[3] Was performance prevented by defendant?

After having failed to furnish, for the 1920 season, machines capable of doing the work guaranteed, the plaintiff waited until nearly the middle of August following before making any effort to correct the faults of its machines; and then it did nothing but write a letter. It was not until September 9, 1921, that any representative of the defendant appeared on the scene, and he did nothing but look about. It is not a fact that this representative was refused admission to the factory; on the contrary, he was made free of it. He was not forbidden to take down the flushing lines; it was suggested to him that the filters should remain as they then were until they could be tried when grinding began. He acquiesced to the extent that he agreed to transmit the suggestion to his superiors; and when it was reported to them they did not reject it. In short, the plaintiff was not prevented from doing anything it chose to do.

After the second failure, on the test of October 26, 1921, the plaintiff might have put in its new flushing lines. It is true that to save expense the plaintiff wished to use the materials of the old for the new, and thus delayed work on the new flushing lines until it could get the old ones from the defendant's factory; and hence not enough of the grinding season of 1921 would have remained, after the work was done, for full 30 days' operation; but the importance of the stipulation on that point in the contract was only that it marked the maturity of the plaintiff's final payment; it had nothing to do with the plaintiff's duty to get ready for operation. If after the filters were ready for successful operation the plaintiff's final payment was to be delayed for lack of time to demonstrate their success, that is something, considering the plaintiff's own long continued and inexcusable delays, of which it had no right to complain.

In any view, the plaintiff's contention on this point is not substantial; for the changes which its witnesses say they wished to make, and which the defendant would not permit them to make, were actually made on filters of identical design and construction in the Supple factory, and I consider that the evi-

dence shows that the Supple filters were as inefficient after the changes as before.

[4] It is said the defendant's conduct amounted to acceptance.

Of course, a purchaser, if he chooses, may condone the faults of the seller or the defects of the thing sold, and, by accepting the thing notwithstanding, be bound for the price; and acceptance may even be implied from his conduct. The cases cited in plaintiff's brief illustrate the rule but the circumstances mentioned in those cases do not of themselves constitute acceptance; they only raise a presumption of acceptance, which is the fact to be proved. Acceptance is not proved here; the work which Mr. Guiterrez did on the filters was done with Mr. Martel's authority, and only by way of hopeful experimentation for the plaintiff's account. Any presumption which might arise from it is rebutted by the whole conduct of the defendant; and by the fact, which I consider proved, that the plaintiff's filters were palpably incapable of doing the work for which they were designed.

The plaintiff's claims with reference to insurance were abandoned at the argument.

The plaintiff's demands are rejected. The defendant's demand in reconvention is proved and allowed.

Decree.

The judgment appealed from is therefore affirmed.